IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN JISU TECHNOLOGY CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-04152 |
| ) | |
| THE PARTNERSHIPS AND UNINCORPORATED ) | Honorable Judge Sara L. Ellis |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE A, ) | |
| ) | Magistrate Judge Jennice W. Appenteng |
| Defendants. ) | |
| ) | |
| _____ ) | |

**DEFENDANT SLENPET'S EMERGENCY MOTION TO VACATE TEMPORARY RESTRAINING ORDER AND TO INCREASE REQUIRED BOND; AND OPPOSITION TO PLAINTIFF JISU'S MOTION FOR A PRELIMINARY INJUNCTION**

Defendant Shenzhen Willsea E-Commerce Co. Limited (hereinafter referred to as "SLENPET") moves the Court, on an emergency basis, to vacate the *ex parte* temporary restraining order ("TRO") issued against SLENPET on June 20, 2024, and to increase the amount of bond Plaintiff must pay. It also opposes Plaintiff's motion for a preliminary injunction on the same grounds as its motion to vacate.

**I.    INTRODUCTION**

This lawsuit concerns the claim by Shenzhen Jisu Technology Co., Ltd. ("Jisu" or "Plaintiff") that SLENPET's neck fan product (the "accused product") has infringed claims 1 and 5 of U.S. Pat. No. 11,635,083 (the "'083 patent"), claim 1 of U.S. Pat. No. 11,661,947 (the "'947 patent"), and claims 1, 5, and 6 of U.S. Pat. No. 11,719,250 (the "'250 patent") (collectively, the "asserted patents"), all of which directed to neck fans. This assertion lacks merits because the accused product does not infringe any of the asserted independent claims of the asserted patents.

1

SLENPET now seeks to vacate the improperly granted *ex parte* temporary restraining order and to seek an increase in the bond that must be posted to compensate SLENPET for damages it suffered during the pendency of the granted injunctive relief. It also opposes Plaintiff's motion for a preliminary injunction on the same grounds as its motion to vacate. As shown below, Plaintiff cannot make the required "clear showing" that it is likely to succeed on the merits, because the accused product does not infringe the asserted patent claims, something the court was unable to fully consider during the *ex parte* briefing for the temporary restraining order. Without the required likelihood of success on the merits, there is no basis for imposition of either a temporary restraining order or a preliminary injunction. And because SLENPET has suffered considerable economic losses due to that order, the amount of bond required from Plaintiff should be increased to $200,000 to better cover those losses.

## II.     LEGAL STANDARD

In the Seventh Circuit courts can use "wide discretion" to modify an injunction based on new facts. *See System Federation No. 91, Ry. Emp. Dept., AFLCIO v. Wright*, 364 U.S. 642, 647 (1961); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007) (stating that "any injunction issued by a court of equity is itself subject to later modification").

Initially, courts should be cautious implementing temporary restraining orders and preliminary injunctions as they are "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). To prevail, the party seeking the temporary restraining order or preliminary injunction must carry the burden of persuasion by a "clear showing." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Further, this court acknowledges that "[t]he standards for a temporary restraining order and the standards for a preliminary injunction are identical." *See, e.g.*, *Charter Nat'l Bank & Trust v.*

*Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted). Thus, to persuade the court to grant either a temporary restraining order, or a preliminary injunction the Plaintiff has the burden to show (1) a likelihood of success on the merits; (2) irreparable harm; and (3) that the balance of the equities and the public interest favors emergency relief. Fed. R. Civ. P. 65(b)(1)(A); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The court then utilizes a "sliding scale" approach where if it is less likely the plaintiff will succeed on the merits, the plaintiff must then demonstrate that more of the balance of the harms are in its favor. *See Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018). Additionally, the "balancing process should also encompass any effects that granting or denying the preliminary injunction would have on nonparties (something courts have termed the 'public interest')." *Id.* Indeed, to adequately demonstrate the necessity of these pre-trial restrictions "the plaintiff must show that the immediate irreparable injury 'will result to the movant before the adverse party can be heard in opposition' and that notice to the defendant should not be required." *Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *1 (N.D. Ill. Oct. 31, 2013) (Fed. R. Civ. P. 65(b)(1)(A), (B)).

  Additionally, "'a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart . . . to warrant a fee award.'" *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns*, 2024 WL 3292812, at *14 (N.D. Ill. July 2, 2024) citing to *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014). It is the district courts discretion based on case-by-case facts to determine whether a case is exceptional, however, "[t]here is no precise rule or formula for making these determinations." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 554 (2014). These fees are warranted "in the rare

case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.*

### III. ARGUMENT

**A. The Temporary Restraining Order and Preliminary Injunction are Unwarranted Because SLENPET Raises a "Substantial Question" of Noninfringement, so Plaintiff Cannot Make a "Clear Showing" of Likelihood of Success on the Merits**

The court's June 20, 2024, temporary restraining order severely hampered SLENPET's lawful business activities by enjoining SLENPET's sales through its merchant platform Amazon.com and imposing a prejudgment asset restraint. This order was imposed *ex parte*, without the court hearing any of SLENPET's evidence. On its face, this evidence demonstrates that Plaintiff is unable of meeting its burden of providing a "clear showing" that it was likely to succeed on the merits.

Indeed, to meet its burden the Plaintiff is required to demonstrate a reasonable likelihood of success on the merits, not simply a "better than negligible" chance of success. *See Mays v. Dart*, 974 F.3d 910, 822 (7th Cir. 2020). To mitigate undue financial harm associated with these pre-trial restrictions, "[a] preliminary injunction should not issue if the accused infringer 'raises a substantial question concerning either infringement or validity.'" *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017).

Here, both the temporary restraining order and a preliminary injunction are inappropriate because SLENPET raises a "substantial question concerning infringement," thus depriving Plaintiff of any chance of making a "clear showing" it will succeed on the merits. SLENPET is accused of infringing the '083 patent, the '947 patent, and the '250 patent, all directed to neck fans. In its Complaint, Plaintiff provided infringement positions for independent claim 1 and dependent

4

claim 5 of the '083 patent, independent claim 1 of the '947 patent, and independent claim 1 and dependent claims 5 and 6 of the '250 patent.[1] *See* Complaint at Exs. C1-C3.

### 1. The Accused Product Does Not Meet All the Limitations of Independent Claim 1 of U.S. Patent No. 11,635,083

Claim 1 of the '083 patent reads:

> A neck fan, comprising:
>
> an arc-shaped shell, configured to be worn around a neck of a user,
>
> wherein the arc-shaped shell comprises a first portion configured to be worn around a side of the neck and a second portion configured to be worn around another side of the neck;
>
> each of the first portion and the second portion comprises a wall defining a receiving space, and the wall comprises a first side wall close to the neck and a second side wall connected to and opposite to the first side wall; and
>
> **each of the first side wall and second side wall defines a plurality of air inlets**, at least one of the first side wall and the second side wall defines a plurality of air outlets, and the plurality of air inlets and the plurality of air outlets are communicating with the receiving space; and
>
> a plurality of fan assemblies, wherein each of the receiving space of the first portion and the receiving space of the second portion receives one of the plurality of fan assemblies, wherein each of the plurality of fan assemblies is configured to guide air from the plurality of air inlets of the first side wall and the second side wall of a respective portion to the plurality of air outlets of the respective portion,
>
> wherein each of the first portion and the second portion comprises a cover;
>
> the cover is disposed on a side of the second side wall away from the first side wall and corresponds to the plurality of air inlets; and
>
> a gap is defined between an edge of the cover and the second side wall and is communicated with the plurality of air inlets.

(Emphasis added.)

---

[1] As claims 5 of the '083 patent and claims 5 and 6 of the '250 patents are dependent claims, SLENPET responds only to the analysis of the independent claim 1 of each of the patents.

5

Claim 1 of the '083 patent is directed towards an arc-shaped neck fan configured to be worn around the neck which contains "a plurality of air inlets (**131**)[2]" and a "plurality of air outlets (**12**)" which are found on the "first side wall" and the "second-side wall."



Fig. 1

Fig. 2

Fig. 3

Fig. 1 above is an annotated reproduction of FIG. 1 in the '083 patent, with the annotations showing the air inlets in red circles and the air outlets in a blue circle. Notice that the air inlets are on both the "first side wall," the one that is worn closest to the neck, as well as on the "second side wall," which is the side wall furthest from the neck. Fig. 2 is an image taken from Plaintiff's infringement charts which purports to represent all the products from all the Defendants in this

---

[2] These number designate the parts labeled in the drawing of the patents and in the specification.

case.[3] Fig. 3 is a photograph of the accused product with labels identifying the air inlets and air outlets. Upon first observation the picture of the exemplary Defendants' product (Fig. 2), which, like FIG. 1 from the patent, contains a plurality of "air outlets" along the arc of the second wall, looks markedly different than the accused product. The accused product lacks air outlets positioned along the second wall arc, and instead houses them on the first side wall adjacent to the air inlets. Claim 1 of the '083 patent requires that "**each of the first side wall and the second side wall** defines a plurality of air inlets" (emphasis added). The accused product does not meet this claim element, as demonstrated in Fig. 3, because the air inlets on the accused product are **only** on the first side wall. For at least this reason, Plaintiff cannot make a "clear showing" of likelihood of success on the merits.

### 2. The Accused Product Does Not Meet All the Limitations of Independent Claim 1 of U.S. Patent No. 11,661,947

Claim 1 of the '947 patent reads:

> A neck fan, comprising:
>
> an arc-shaped housing, configured to hang around a user's neck, wherein the arc-shaped housing comprises a first part and a second part respectively configured to be around two opposite sides of the user's neck, each of the first part and the second part comprises sidewalls surrounding an accommodating space, each of the first part and the second part further defines air inlets and air outlets communicated with the accommodating space, **a partition is arranged in the accommodating space and configured to divide the accommodating space into two accommodating parts arranged along an extension direction of the arc-shaped housing**, one of the two accommodating parts corresponds to the air inlets and the air outlets; and
>
> a plurality of fan assemblies, wherein each of the plurality of fan assemblies is received in the accommodating space, and each of the plurality of fan assemblies is configured to direct air into one of the two accommodating parts corresponding to the air inlets and to direct air out of the one of the two accommodating parts through corresponding air outlets, the number of the air

---

[3] In FN 1 of Ex. C-1 Plaintiff notes "[t]he Accused Instrumentalities all use identical components such as the fan, electric motor, electric motor controller, and shaft. As such, the M5 is used as an exemplary product, but **all of the Accused Instrumentalities infringe the claims an identical same manner**." Complaint at Ex. C-1 (emphasis added).

outlets is multiple, and multiple air outlets are arranged along the extension direction of the arc-shaped housing;

wherein the plurality of fan assemblies comprise a first fan assembly and a second fan assembly;

each of the sidewalls comprises an inner wall disposed near the user's neck and an outer wall opposite to the inner wall and disposed away from the user's neck; **and the air inlets are defined in each of the inner wall and the outer wall.**

(Emphases added.)



Fig. 4



Fig. 5

Claim 1 of the '947 patent is directed to an arc-shaped neck fan configured to be worn around the neck where the first side wall and second side wall house an "accommodating space" between the two walls, which also contains "a partition" meant to separate the accommodating space into "two accommodating parts." Fig. 4 above is an annotated partial reproduction of FIG. 2 of the '947 patent, which depicts an embodiment with the "partition" (13) identified by a green circle, and the "two accommodating parts" (105a, 105b) identified by purple arrows. Fig. 5 above depicts the internal structure of SLEPNET's product. As evident from Fig. 5, SLENPET's product does not have any "partition" to break the "accommodating space" into "two accommodating parts."

Similar to claim 1 of the '083 patent discussed above, claim 1 of the '947 patent also requires that "the air inlets are defined in each of the inner wall and the outer wall." Therefore, the claim requires that air inlets are located on both the inner wall and the outer wall. The accused

8

product, as discussed above in connection with claim 1 of the '083 patent, has air inlets only on the inner wall, not on the outer wall. Therefore, for the same reason as discussed in connection with claim 1 of the '083 patent, the accused product does not meet this limitation, either.

For at least the above reasons, Plaintiff cannot make a "clear showing" of likelihood of success on the merits.

### 3. The Accused Product Does Not Meet All the Limitations of Independent Claim 1 of U.S. Patent No. 11,719,250

Claim 1 of the '250 patent reads:

> A neck fan, comprising:
>
> an arc-shaped shell, configured to be worn around a neck of a user,
>
> wherein the arc-shaped shell comprises a first portion configured to be worn around a side of the neck and a second portion configured to be worn around another side of the neck;
>
> each of the first portion and the second portion comprises a wall defining a receiving space, and the wall comprises a first side wall close to the neck and a second side wall connected to and opposite to the first side wall; and
>
> **each of the first side wall and the second side wall defines a plurality of air inlets**, at least one of the first side wall and the second side wall defines a plurality of air outlets, and the plurality of air inlets and the plurality of air outlets are communicating with the receiving space;
>
> a plurality of fan assemblies, wherein each of the receiving space of the first portion and the receiving space of the second portion receives one of the plurality of fan assemblies, wherein each of the plurality of fan assemblies is configured to guide air from the plurality of air inlets of the first side wall and the second side wall of a respective portion to the plurality of air outlets of the respective portion,
>
> wherein one of the plurality of fan assemblies corresponds to at least one of the plurality of air inlets in the first side wall and at least one of the plurality of air inlets in the second side wall, and the **at least one of the plurality of air inlets in the first side wall and at least one of the plurality of air inlets in the second side wall**, which correspond to the same one of the plurality of fan assemblies, face opposite directions.

(Emphases added.)

Similar to claim 1 of the '083 patent discussed above, claim 1 of the '250 patent also requires that "each of the first side wall and the second side wall defines a plurality of air inlets," and "at least one of the plurality of air inlets [is] in the first side wall and at least one of the plurality of air inlets [is] in the second side wall." Therefore, the claim requires that air inlets be located on both the first side wall and the second side wall. As discussed above in the '083 patent section, the accused product has air inlets only on the inner side toward the neck, as demonstrated in Fig 3. Therefore, the accused product does not meet this claim requirement. For at least these reasons, Plaintiff cannot make a "clear showing" of likelihood of success on the merits.

### B. The Court Should Award SLEPNET the Plaintiff's Bond Posted for the Temporary Restraining Order and/or Award SLEPNET the Damages Suffered by the Order, Plus Increase the Amount of Bond Required from Plaintiff and Should Find Exceptional Case

Plaintiff sought a temporary restraining order against SLEPNET that, among other things, mandates that it stop selling any product that Plaintiff believes infringes the three patents in suit, freezes SLEPNET's U.S. assets and payments, and mandates that third parties (such as Amazon.com) refrain from offering for sale or selling SLEPNET products and freeze SLEPNET's accounts with these parties. Although the court granted Plaintiff's motion, the order was based on false statements and incorrect findings made in the absence of adversarial presentation.

Moreover, while Plaintiff provides a screen shot of SLENPET's product in the check-out basket on Amazon **prior to** purchase (Ex. A), it has to date not produced evidence that Plaintiff has **actually purchased** or examined SLENPET's accused product. Additionally, the apparent physical differences between the "exemplary product" provided by Plaintiff in the claim charts attached to its complaint and SLENPET's product suggest that Plaintiff may not have even looked at Plaintiff's specific product before filing suit and requesting a temporary restraining order or a

10

preliminary injunction. This type of objectively baseless litigation, or litigation brought with bad faith is the type of behavior that courts seek to avoid by awarding fees for "exceptional case."

Thus, the temporary restraining order should have never been granted and Plaintiff should compensate SLEPNET for the damages that it has suffered due to the improper temporary restraining order. These damages include an estimated $3000 per day loss of revenue, the loss of SLEPNET's Amazon ranking, and the loss of search-engine optimization (SEO). *See* Ex. B (Declaration of Wentao Hu). Once the listing is back up at Amazon, SLEPNET will spend at least an additional $30,000 in advertising to try to regain its ranking and SEO positions. *See id.*

In the increasingly likely scenario that those efforts are not successful, SLEPNET stands to lose hundreds of thousands of dollars (and possibly over a million) in profits stemming from the improperly issued temporary restraining order and reserves its rights to recover those loses from Plaintiff. At present, the temporary restraining order required a bond of only $1000, which is grossly inadequate to cover SLEPNET's damages. Thus, the court should award SLEPNET the full amount of SLEPNET's damages: $3000 per day that its Amazon storefront is unable to make any sales and $30,000 for the estimated amount of advertising needed for SLEPNET to attempt to regain its lost Amazon ranking and SEO. The court should also immediately increase the bond amount required of Plaintiff to $200,000, to ensure that SLEPNET can recover for its losses for the improperly requested temporary restraining order. Additionally, as the Plaintiff failed in performing even its basic due diligence in examining SLEPNET's product before bringing this lawsuit, the court should award exceptional fees.

Dated: August 1, 2024                               */s/ Nicholas A. Kurk*
                                                    Stephen J. Rosenfeld
                                                    Nicholas A. Kurk
                                                    MCDONALD HOPKINS LLC

300 North LaSalle, Suite 1400
Chicago, IL 60654
Phone: (312) 280-0111
srosenfeld@mcdonaldhopkins.com
nkurk@mcdonaldhopkins.com

Gang "Gavin" Ye (VA 90212)
Courtney Casp
BAYES PLLC
8260 Greensboro Drive, Suite 625
McLean, VA 22102
Phone: (703) 995-9887
Fax:    (703) 821-8128
gavin.ye@bayes.law
courtney.casp@bayes.law

*ATTORNEYS FOR DEFENDANT SHENZHEN WILLSEA E-COMMERCE CO. LIMITED*