UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN JISU TECHNOLOGY CO., LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE PARTNERSHIPS AND ) <br> UNINCORPORATED ASSOCIATIONS ) <br> IDENTIFIED ON SCHEDULE A, ) <br> ) <br> Defendants. ) | No. 24 C 4152 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Shenzhen Jisu Technology Co., Ltd. ("Jisu"), sued thirty-seven defendants for allegedly infringing three of its patents, U.S. Patent Nos. 11,635,083 (the "'083 Patent"), 11,661,947 (the "'947 Patent"), and 11,719,250 (the "'250 Patent" and collectively, "the Patents"), which all relate to a neck fan product Jisu sells. Jisu obtained an *ex parte* temporary restraining order ("TRO") that, *inter alia*, prohibited Defendants from selling their allegedly infringing products and froze their assets located in various e-commerce business accounts. Doc. 8. Jisu then moved to convert the TRO into a preliminary injunction. Doc. 13. The Court granted the motion as to all Defendants but Defendant No. 26, Shenzhen Willsea E-Commerce Co. Ltd. ("SLENPET"), and the parties agreed to an extension of the TRO against SLENPET while they briefed this motion. SLENPET objects to the preliminary injunction and TRO against it, and further moves the Court for damages equal to $30,000 plus $3,000 per day that it was unable to make any sales while enjoined from selling its allegedly infringing product.[1]

---

[1] The Court previously granted SLENPET's motion to increase Jisu's TRO bond amount. Doc. [38].

The Court finds that Jisu has failed to develop a record against SLENPET that can shoulder its evidentiary burden, meaning it is not entitled to a preliminary injunction against SLENPET. Accordingly, the Court denies Jisu's motion for a preliminary injunction as to SLENPET without prejudice and dissolves the TRO against SLENPET. The Court also finds that SLENPET's motion for damages is untimely and that it has failed to produce evidence that justifies awarding damages. Accordingly, the Court denies SLENPET's motion without prejudice.

## BACKGROUND

### I. Jisu's Patents

#### A. The '083 Patent

The '083 Patent, titled "Neck Fan," relates to fans, and particularly to a fan that hangs around a neck. The '083 Patent issued on April 25, 2023. Although Jisu accuses Defendants of infringing claims 1 and 5 of the '083 Patent, SLENPET only challenges whether it infringed claim 1 because claim 5 depends on claim 1.

Independent claim 1 of the '083 Patent recites:

> A neck fan, comprising:
>
> an arc-shaped shell, configured to be worn around a neck of a user,
>
> wherein the arc-shaped shell comprises a first portion configured to be worn around a side of the neck and a second portion configured to be worn around another side of the neck;
>
> each of the first portion and the second portion comprises a wall defining a receiving space, and the wall comprises a first side wall close to the neck and a second side wall connected to and opposite to the first side wall; and
>
> each of the first side wall and the second side wall defines a plurality of air inlets, at least one of the first side wall and the second side wall defines a plurality of air outlets, and the

plurality of air inlets and the plurality of air outlets are communicating with the receiving space; and

a plurality of fan assemblies, wherein each of the receiving space of the first portion and the receiving space of the second portion receives one of the plurality of fan assemblies, wherein each of the plurality of fan assemblies is configured to guide air from the plurality of air inlets of the first side wall and the second side wall of a respective portion to the plurality of air outlets of the respective portion,

wherein each of the first portion and the second portion comprises a cover;

the cover is disposed on a side of the second side wall away from the first side wall and corresponds to the plurality of air inlets; and

a gap is defined between an edge of the cover and the second side wall and is communicated with the plurality of air inlets.

'083 Patent at 15:33–67.

Figure 1 to the '083 Patent illustrates one embodiment of the patented neck fan:



FIG. 1

*Id.* at fig. 1. Number 131 in Figure 1 relates to the "air inlets" mentioned in independent claim 1, while Number 12 in Figure 1 relates to the "air outlets" mentioned in independent claim 1.

    **B.**    **The '947 Patent**

The '947 Patent, also titled "Neck Fan," similarly relates to fans, particularly to a fan that hangs around a neck. The '947 Patent issued on May 30, 2023. Jisu accuses SLENPET of infringing on claim 1 of the '947 Patent.

Independent claim 1 of the '947 Patent recites:

> A neck fan, comprising:
>
> an arc-shaped housing, configured to hang around a user's neck, wherein the arc-shaped housing comprises a first part and a second part respectively configured to be around two opposite sides of the user's neck, each of the first part and the second part comprises sidewalls surrounding an accommodating space, each of the first part and the second part further defines air inlets and air outlets communicated with the accommodating space, a partition is arranged in the accommodating space and configured to divide the accommodating space into two accommodating parts arranged along an extension direction of the arc-shaped housing, one of the two accommodating parts corresponds to the air inlets and the air outlets; and
>
> a plurality of fan assemblies, wherein each of the plurality of fan assemblies is received in the accommodating space, and each of the plurality of fan assemblies is configured to direct air into one of the two accommodating parts corresponding to the air inlets and to direct air out of the one of the two accommodating parts through corresponding air outlets, the number of the air outlets is multiple, and multiple air outlets are arranged along the extension direction of the arc-shaped housing;
>
> wherein the plurality of fan assemblies comprise a first fan assembly and a second fan assembly;
>
> each of the sidewalls comprises an inner wall disposed near the user's neck and an outer wall opposite to the inner wall and disposed away from the user's neck; and

the air inlets are defined in each of the inner wall and the outer wall.

'947 Patent at 15:17–48.

Figure 2 to the '947 Patent provides an illustrative view of the internal design of the neck fan:



FIG. 2

*Id.* at fig. 2. Number 13 in Figure 2 relates to the "partition" mentioned in independent claim 1, while Number 105 (split into 105a and 105b) refers to the "two accommodating parts" described in independent claim 1.

### C. The '250 Patent

The '250 Patent, titled "Neck Fan," similarly relates to fans, and particularly to a fan that hangs around a neck. The '250 Patent issued on August 8, 2023. Although Jisu accuses Defendants of infringing claims 1, 5, and 6 of the '250 Patent, SLENPET only challenges whether it infringed claim 1 because claims 5 and 6 both depend on claim 1.

Independent claim 1 of the '250 Patent recites:

> A neck fan, comprising:
>
> An arc-shaped shell, configured to be worn around a neck of a user,
>
> Wherein the arc-shaped shell comprises a first portion configured to be worn around a side of the neck and a second portion configured to be worn around another side of the neck;
>
> Each of the first portion and the second portion comprises a wall defining a receiving space, and the wall comprises a first side wall close to the neck and a second side wall connected to and opposite to the first side wall; and
>
> Each of the first side wall and the second side wall defines a plurality of air inlets, at least one of the first side wall and the second side wall defines a plurality of air outlets, and the plurality of air inlets and the plurality of air outlets are communicating with the receiving space;
>
> A plurality of fan assemblies, wherein each of the receiving space of the first portion and the receiving space of the second portion receives one of the plurality of fan assemblies, wherein each of the plurality of fan assemblies is configured to guide air from the plurality of air inlets of the first side wall and the second side wall of a respective portion to the plurality of air outlets of the respective portion,

> Wherein one of the plurality of fan assemblies corresponds to at least one of the plurality of air inlets in the first side wall and at least one of the plurality of air inlets in the second side wall, and the at least one of the plurality of air inlets in the first side wall and at least one of the plurality of air inlets in the second side wall, which correspond to the same one of the plurality of fan assemblies, face opposite directions.

'250 Patent at 15:30–63.

## II. SLENPET's Allegedly Infringing Product

As a sealed exhibit to its complaint, Jisu submitted comparison charts showing how an "exemplary product," Doc. 2-5 at 3 n.1, infringes on the claims of the three patents it alleges that Defendants violated. Jisu claims that each of Defendants' respective accused products "use identical components such as the fan, electric motor, electric motor controller, and the shaft." *Id.*; *see also* Doc. 1 ¶ 3 ("[T]he Infringing Products all share identical infringing components[.]"). The exemplary product looks like this:



Doc. 2-5 at 4. SLENPET did not manufacture the "exemplary product," and states that its product is dissimilar.

SLENPET embedded images of its accused product with its brief that shows how the two neck fans are dissimilar. *See* Doc. 28. Two of the pictures show that the product does not have vents in the outside of the fan that act as air inlets or outlets. *Id.* at 6. It looks like this:



*Id.* (annotations in original). Another picture, showing the internal construction of its product, reveals that the fan's housing unit consists of a single circular space. *Id.* at 8. It looks like this:



*Id.* (annotation in original).

### III. SLENPET's Alleged Damages

SLENPET submitted an affidavit from its general manager, Wentao Hu, outlining the harm it claims to have suffered while the TRO has prevented it from making sales. Hu provides a "conservative estimate" that SLENPET loses $3,000 a day in revenue while the TRO is in effect, as well as harm to its Amazon ranking and search engine optimization. Doc. 28-2 ¶ 6. Hu avers that SLENPET will need to spend at least $30,000 to recover its Amazon ranking and search engine optimization positions. Hu says that SLENPET could lose "possibly over a million" dollars if those efforts are unsuccessful. *Id.* ¶ 7.

### LEGAL STANDARD

In deciding a motion for a preliminary injunction in a patent case, district courts apply Federal Circuit law instead of the law of the circuit in which they sit because the motion "involves substantive matters unique to patent law." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012). "To obtain a preliminary injunction, a party must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The first two factors—likelihood of success on the merits and irreparable harm—are the most critical in a patent case, and a court may deny a motion for a preliminary injunction if 'a party fails to establish *either* of the[se] two critical factors.'" *Pressure Specialist, Inc. v. Next Gen Mfg. Inc.*, 469 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)).

## ANALYSIS

The Court first considers whether Jisu is entitled to a preliminary injunction against SLENPET before turning to SLENPET's motion to increase Jisu's bond and for damages.

### I. Whether Jisu Is Likely to Succeed on the Merits of its Claim

The parties' briefing focuses entirely on whether SLENPET's accused product infringes Jisu's patents. Accordingly, Jisu's entitlement to a preliminary injunction rises or falls with this element. *See Reebok*, 32 F.3d at 1556.

"An accused product infringes a claim if it embodies each claim element or its equivalent." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 784 (Fed. Cir. 2019). "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). "Where, as here, the parties do not dispute the scope of any particular claim term, however, claim construction is not necessary." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022). As such, the Court reads the Patents' claims according to their "ordinary and customary meaning[s]." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016) (citation omitted). Under the doctrine of equivalents, the accused product infringes the patent if "there is equivalence between the elements of the accused product . . . and the claimed elements of the patented invention." *Id.* (citation omitted). The patentee has the burden of

10

proving infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).

A. **The '083 and '250 Patents**

SLENPET argues that its accused product does not infringe either the '083 or '250 Patents. It focuses on both Patents' claims that "each of the first side wall and the second side wall [of the neck fan] defines a plurality of air inlets," '083 Patent at 15:46–47; '250 Patent at 15:42–43, and the '250 Patent's claim that the neck fan has "at least one of the plurality of air inlets in the first side wall and at least one of the plurality of air inlets in the second side wall," '250 Patent at 15:59–61.[2] SLENPET contrasts the two Patents' claims with images of its accused product—which show that the accused product lacks air inlets on the second side wall— and faults Jisu for using an accused "exemplary product" as the basis of this suit when that product does not accurately reflect SLENPET's actual design. *See* Doc. 2-5 at 3 n.1.

Jisu argues that SLENPET's argument is "questionable at best" due to the presence of what it claims to be additional air inlets on the side of SLENPET's accused product. Doc. 31 at 2. But Jisu, not SLENPET, bears the burden of persuasion on its motion for a preliminary injunction. *See SmithKline*, 859 F.2d at 889. The Court cannot grant Jisu a preliminary injunction because *SLENPET's* evidence may be lacking; Jisu must make a showing of its own to win its motion. The '083 and '250 Patents clearly state that "each of the first side wall *and* the second side wall defines a plurality of air inlets," '083 Patent at 15:46–47 (emphasis added); '250 Patent at 15:42–43 (emphasis added), and the picture of SLENPET's accused product does not show any air inlets on the second side wall, much less a plurality of them. Accordingly, Jisu

---

[2] Based on the parties' briefing, the Court understands "the first side wall" to refer to the inside of the fan, which makes contact with the wearer's neck, while "the second side wall" refers to the outside of the fan, which does not.

11

has not sufficiently shown that it is likely to succeed on the merits of its claim that SLENPET's product literally infringes either of these patents. *See Microsoft*, 817 F.3d at 1313 ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.").

Nevertheless, Jisu argues that SLENPET's design infringes the '083 and '250 Patents based on the doctrine of equivalents. Jisu argues that the air inlets satisfy the doctrine of equivalents because the second purported air inlet set "performs the same function . . . in the same way . . . to achieve the same result." Doc. 31 at 3. But Jisu has no way of knowing what function the slits in SLENPET's accused products perform or whether they serve the same functions *because Jisu has not physically inspected SLENPET's product.* Its attorney arguments based off SLENPET's evidence and a compare/contrast between its "exemplary product" and a screenshot of an Amazon shopping cart, *see* Doc. 31 at 7–8, are pure conjecture that cannot bear an evidentiary burden of any weight. *See Am. Eagle Wheel Corp. v. Am. Racing Equip., Inc.*, 129 F.3d 135, 1997 WL 643916 (Table), at *1 (Fed. Cir. 1997) ("Likelihood of success on the merits, for purposes of a preliminary injunction, requires evidence that the patent is not invalid and is infringed.").

Accordingly, based on the record before it, the Court finds that Jisu has failed to demonstrate that it is likely to show that SLENPET's accused product infringes on the '083 and '250 Patents.

B. The '947 Patent

SLENPET also argues that Jisu cannot show by a preponderance of the evidence that its accused product infringes the '947 Patent, specifically its definition that the claimed product has "a partition [that] is arranged in the accommodating space and configured to divide the

accommodating space into two accommodating parts arranged along an extension direction of the arc-shaped housing." '947 Patent at 11:26–29. SLENPET contrasts this claim with an image of its own accused product, which appears to lack a partition separating the accused product's accommodating space into "two accommodating parts." SLENPET also points to the '947 Patent's requirement that the product's "air inlets are defined in each of the inner wall and the outer wall," *id.* at 11:47–48, and notes that—as discussed above—its product fails to meet this specification as well.

Again, Jisu fails to show that it is likely to succeed in proving that SLENPET's product—as opposed to the exemplary product that Jisu asserts is identical—infringes the '947 Patent. Jisu once again relies on its analysis of SLENPET's photograph and its deconstruction of an exemplary product to claim that SLENPET infringed the '947 Patent. This is, however, an insufficient evidentiary basis for a preliminary injunction. *Am. Eagle Wheel Corp.*, 129 F.3d 135, 1997 WL 643916 (Table), at *1.

Because the Court finds that Jisu has failed to develop evidence that it is likely to succeed on the merits of its claims, the Court denies its motion for a preliminary injunction against SLENPET. *See Reebok*, 32 F.3d at 1556 (denial of preliminary injunction is appropriate if "a party fails to establish *either* of" likelihood success on the merits or irreparable harm). Likewise, the Court dissolves the TRO against SLENPET. This decision is without prejudice: if Jisu brings evidence to the Court that shows how *SLENPET's* neck fan infringes on its patents, the Court will then entertain another motion for a preliminary injunction based on that evidence.

13

## II. SLENPET's Motion for Damages Against Jisu's TRO Bond

The Court next turns to SLENPET's motion for damages. SLENPET asserts that it has lost $3,000 in revenue per day and may incur advertising costs of $30,000 to reestablish its Amazon ranking and search engine optimization positions.

There is an "implicit presumption" that a defendant that has been wrongfully enjoined will be able to recover injunction damages pursuant to Rule 65(c). *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983). "A wrongfully enjoined defendant must establish what damages were proximately caused by the injunction; while the damages cannot be speculative, the amount need not be proven mathematically." *Rustic Retreats Log Homes, Inc. v. Pioneer Log Homes of Brit. Columbia, Inc.*, No. 19 C 1614, 2022 WL 1135008, at *1 (E.D. Wis. Apr. 18, 2022) (citing 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2973 (3d ed. 2005)). Simply because a court dissolves a TRO does not mean the defendant was "wrongfully enjoined:" while the "Seventh Circuit has not considered what constitutes wrongful enjoinment . . . several other courts of appeals have concluded that a party was 'wrongfully enjoined' if it is determined that the enjoined party always had the right to do the enjoined act." *Id.* (collecting cases). "The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990).

Even assuming, *arguendo*, that SLENPET qualifies as a "wrongfully enjoyed" party, *Rustic Retreats Log Homes*, 2022 WL 1135008, at *1, it would still be premature to award SLENPET recovery for any damages it may have suffered under the now-dissolved TRO. This is because SLENPET has not sufficiently supported its request for damages. Hu's affidavit

14

asserts that SLENPET has lost $3,000 in revenue per day and will incur $30,000 in advertising expenses, but he provides no supporting documentation. *Cf. Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015) (declining to increase Rule 65(c) bond when defendant offered "nothing more than self-serving affidavits with no supporting evidence to justify" increase). Moreover, the Court cannot calculate damages based on lost revenue alone. As the Seventh Circuit has explained, "gross revenue is generally not an appropriate measure of damages because revenue is calculated without regard to the costs the [party] incurred in the course of making that revenue." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 647 (7th Cir. 2011). In other words, the Court cannot calculate what harm SLENPET suffered on a daily basis without knowing how much *profit* the TRO forced it to forego. The Court similarly cannot know how much SLENPET will expend in advertising costs without it having actually incurred those expenses. However, if SLENPET provides documents supporting lost profit calculations and future costs associated with the TRO's restraint, the Court will then consider a renewed motion for damages.

Accordingly, the Court denies SLENPET's motion to recover damages against Jisu's bond without prejudice.

## CONLUSION

For the foregoing reasons, the Court denies Jisu's motion for a preliminary injunction against SLENPET [13] without prejudice. The Court dissolves the TRO against SLENPET. The Court denies SLENPET's motion for damages [19] without prejudice.

Dated: October 1, 2024

                                                    SARA L. ELLIS
                                                    United States District Judge